T.C. Memo. 2019-77

UNITED STATES TAX COURT

SHELDON SAPOZNIK AND MELISSA MCCROSSEN, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.

Docket No. 7335-17.                       Filed June 18, 2019.

Norman D. McKellar, for petitioners.

William Benjamin McClendon and William Walter Kiessling, for

respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

NEGA, Judge:  By notice of deficiency dated January 10, 2016,[1] respondent

determined deficiencies in the Federal income tax of petitioners and accuracy-

_____

[1]The parties have stipulated that this date is incorrect and that the correct
date is January 10, 2017.

[*2] related penalties under section 6662(a)[2] for the tax years 2014 and 2015.  For

tax year 2014 respondent determined a deficiency of $13,824 and an accuracy-

related penalty of $2,765.  For tax year 2015 respondent determined a deficiency

of $19,270 and an accuracy-related penalty of $3,854.

On April 3, 2017, petitioners timely filed a petition with this Court for

redetermination.  In respondent's first amendment to answer filed on March 22,

2018, respondent increased petitioners' deficiency and accuracy-related penalty

for each of the years.[3]

The two issues remaining for decision are:  (1) whether petitioners were

engaged in their horse-related activities with the objective of making a profit

---

[2]Unless otherwise indicated, all section references are to the Internal
Revenue Code in effect for the taxable years at issue, and all Rule references are to
the Tax Court Rules of Practice and Procedure.  All monetary amounts are
rounded to the nearest dollar.

[3]An increase is due to respondent's determination that certain expenses
deducted were not ordinary and necessary expenses relating to petitioners'
horse-related activity.  Additional tax of $5,391 under sec. 72(t) applies to Mr.
Sapoznik on the distribution from retirement accounts of $53,912.  The parties
have stipulated and the record contains evidence, in the form of a civil penalty
approval form, that respondent complied with the requirements of sec. 6751(b)(1)
in the notice of deficiency.  See Graev v. Commissioner, 149 T.C. 485, 493
(2017), supplementing and overruling in part 147 T.C. 460 (2016).  Further,
respondent concedes the increased accuracy-related penalties in respondent's first
amendment to answer dated March 22, 2018, as respondent did not comply with
sec. 6751(b)(1).  See Graev v. Commissioner, 149 T.C. 485 at 493.

**[*3]** within the meaning of section 183 and (2) whether the expense deductions claimed were allowable under section 162.[4]

FINDINGS OF FACT

Some of the facts are stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. When petitioners filed their petition with this Court, they resided in Tennessee.

I.      Petitioners' Background

Mr. Sapoznik and Ms. McCrossen have been married over nine years. Ms. McCrossen works as a regional sales manager. Mr. Sapoznik, after resigning in 2014 from his job of over 20 years as a health inspector, started a winery waste water equipment sales business.

In the early 1990s Mr. Sapoznik began horse riding as a hobby. In the mid-1990s Mr. Sapoznik purchased his first horse, which was shown by his ex-wife for five or six years until the purchase of a second horse, which Mr. Sapoznik rode in local shows and for enjoyment. Petitioners first reported a horse-related activity on their Schedule C, Profit or Loss From Business, for 2010. Since 2015

---

[4]Because the Court finds below that petitioners did not carry on their horse-related activities with the objective of making a profit within the meaning of sec. 183, the Court need not decide whether the expenses were allowable as deductions under sec. 162.

**[*4]** petitioners have not reported any horse-related activity on their Schedule C, but they currently own a horse[5] which Mr. Sapoznik rides and shows as a hobby.

## II.     Horse-Related Activities

For each year at issue, petitioners reported separate Schedule C horse-related activities for RS Noble Heir and Alhambra Valley Arabians, LLC (Alhambra Valley).  No written business plan was created for either, but petitioners kept a mileage log for their horse-related activities including travel, invoices, and receipts.  No other bookkeeping was performed for either horse-related activity.

### A.     RS Noble Heir

In 2010 petitioners purchased RS Noble Heir, a stallion, and received a business license in the horse's name with the intention of earning stud fees.  RS Noble Heir was sent to a horse training facility, Kiesner Training, Inc. (Kiesner), for several months in 2011 before being returned to California by yearend.  Petitioners' RS Noble Heir horse-related activity ceased in 2012 when the horse became ill and unexpectedly died before the earning of any stud fees.

---

[5]Mr. Sapoznik purchased a horse, Happened In Vegas, in 2016 for $48,000 which he rides in shows and as a hobby.

**[\*5]** B.    Alhambra Valley

On August 23, 2011, petitioners purchased a gelding, Major Sugarfixx, for $25,000.  This purchase led petitioners to create Alhambra Valley in December 2011.[6]

Mr. Sapoznik began showing Major Sugarfixx in 2014, and in 2015 the horse gained a top 10 placement at nationals.  At that time, the horse was being advertised[7] for sale at the shows for $60,000.  Petitioners sold Major Sugarfixx to the owners of Kiesner for $25,000 in 2016.

III.    Horse-Related Activities Financials

For the tax years 2014 and 2015 (years at issue) the net profits and losses on petitioners' horse-related activities reported on Schedules C are as follows:

---

[6]Alhambra Valley was formed in the State of California.  Later it was dissolved and reformed at the end of 2013 in North Carolina.

[7]This marketing was done by word of mouth.  Mr. Sapoznik testified to having a sales video made for $100.  However, there is nothing in the record showing that the video was actually used to market Major Sugarfixx.

[*6]

| Year | Schedule C | Gross income | Total expenses | Net profit (loss) |
|------|-----------|--------------|----------------|-------------------|
| 2014 | RS Noble Heir | -0- | $1,778 | ($1,778) |
| 2015 | RS Noble Heir | -0- | 2,667 | (2,667) |
| 2014 | Alhambra Valley | 3,114 | 58,450 | (55,336) |
| 2015 | Alhambra Valley | 1,114 | 47,790 | (46,676) |
| Total | | 4,228 | 110,685 | (106,457) |

Petitioners' have never in any year made a profit from either Schedule C horse-related activity.

OPINION

I.    Burden of Proof

The Commissioner's determinations in a notice of deficiency are generally presumed correct, and the taxpayer ordinarily bears the burden of proving those determinations erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). If, however, the taxpayer produces credible evidence with respect to any factual issue relevant to ascertaining his tax liability and meets certain other requirements, the burden of proof shifts from the taxpayer to the Commissioner as to that factual issue. Sec. 7491(a)(1) and (2). The burden of proof is on the Commissioner with respect to any new matter raised in his answer or amendment

**[\*7]** thereto. Rule 142(a); see Knudsen v. Commissioner, 131 T.C. 185, 188-189 (2008), supplementing T.C. Memo. 2007-340.

## II. Section 183

Taxpayers may generally deduct all ordinary and necessary business expenses paid or incurred during a taxable year in carrying on a trade or business. Sec. 162(a). In general, no deductions are allowable for expenses incurred in connection with activities not engaged in for profit, such as activities carried on primarily as a sport or hobby or for recreation, except to the extent provided by section 183(b), discussed infra. Sec. 1.183-2(a), Income Tax Regs. Section 1.183-2, Income Tax Regs., sets forth a nonexclusive list of relevant factors to be considered in determining whether an activity is engaged in for profit. To be engaged in for profit, the activity must be engaged in for the primary purpose and with the dominant hope and intent of realizing a profit. Hayden v. Commissioner, T.C. Memo. 1988-310, aff'd, 889 F.2d 1548 (6th Cir. 1989). A taxpayer's expectation of profit need not be reasonable, but it must be in good faith. Allen v. Commissioner, 72 T.C. 28, 33 (1979) (citing section 1.183-2(a), Income Tax Regs.); Dunn v. Commissioner, 70 T.C. 715, 720 (1978), aff'd, 615 F.2d 578 (2d Cir. 1980); Churchman v. Commissioner, 68 T.C. 696, 701 (1977); Benz v. Commissioner, 63 T.C. 375, 383 (1974). A mere declaration of profit objective is

**[\*8]** not controlling, and the Court will give greater weight to all objective facts and circumstances than to a taxpayer's statement of intent with regard to the activity. Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), aff'd without published opinion, 702 F.2d 1205 (D.C. Cir. 1983); sec. 1.183-2(a), Income Tax Regs.

Generally, section 183(d) creates a presumption of a profit objective if, for three of the five taxable years ending with the year at issue, gross income exceeds the deductions attributable to the activity. In cases such as this one where the activity consists in major part of the breeding, training, showing, or racing of horses, a presumption of profit objective exists if gross income exceeds the deductions for two of the seven taxable years ending with the year at issue. Sec. 183(d). Petitioners' horse-related activities have not turned a profit since they were commenced, and thus the presumption created by section 183(d) does not apply.

Respondent alleges that the loss deductions attributable to petitioners' horse-related activities are not allowed on the grounds that the activities giving rise to the losses were "not engaged in for profit" within the meaning of section 183. Petitioners contend that the horse-related activities were engaged in for profit.

[*9]   Section 1.183-2(b), Income Tax Regs., provides a nonexclusive list of factors to consider in evaluating a taxpayer's profit objective, such as:  (1) the manner in which the taxpayer carried on the activity; (2) the expertise of the taxpayer or his or her advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that the assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or loss with respect to the activity; (7) the amount of occasional profits earned, if any; (8) the financial status of the taxpayer; and (9) whether elements of personal pleasure or recreation were involved.  No single factor is determinative of the taxpayer's intention to make a profit, and more weight may be given to some factors than others.  Golanty v. Commissioner, 72 T.C. 411, 426 (1979), aff'd without published opinion, 647 F.2d 170 (9th Cir. 1981); see Dunn v. Commissioner, 70 T.C. at 720; sec. 1.183-2(b), Income Tax Regs.

We analyze the facts and circumstances in the light of the applicable factors listed in the regulation.

A.     Manner in Which Activity Is Conducted

The fact that the taxpayer carries on an activity in a businesslike manner may indicate a profit motive.  Sec. 1.183-2(b)(1), Income Tax Regs.  This

[*10] determination requires that we consider whether the taxpayer:

(1) maintained complete and accurate books and records; (2) conducted the activity in a manner resembling that in which successful practitioners conduct similar business activities; (3) changed operating methods, adopted new techniques, or abandoned unprofitable activities in a manner consistent with an intent to improve profitability; and (4) prepared a business plan. Id.; see Keating v. Commissioner, T.C. Memo. 2007-309, 2007 WL 2962774, at *4 ("Numerous court opinions mention that a businesslike operation often would involve a business plan."), aff'd, 544 F.3d 900 (8th Cir. 2008).

Petitioners did not create written business plans for their horse-related activities, nor did they maintain complete books or records. Mr. Sapoznik testified that his business plan was to have Major Sugarfixx stabled and trained at Kiesner in hopes of winning or placing in the top 10 at nationals and then selling the horse for a profit. Mr. Sapoznik believed stabling the horse at Kiesner and personally receiving lessons on showmanship would lead to success at nationals and greatly increase the value of the horse. Mr. Sapoznik testified to his desire to repeat this plan with other horses sired by Major Sugarfixx's father, Majesteit.[8] For a

---

[8]Mr. Sapoznik described this as prong 2 of a two-pronged business plan. However, the Court finds prong 2 to be a continuation of the alleged business plan

(continued...)

[*11] taxpayer's books and records to indicate a profit motive, the taxpayer should use the books and records "as analytic and diagnostic tools in an effort to achieve profitability". Nissley v. Commissioner, T.C. Memo. 2000-178, 2000 WL 688600, at *6. The only records are a mileage log, receipts, and invoices. Petitioners' recordkeeping represents nothing more than an effort to substantiate expenses reported on their returns. Because of the lack of record keeping, petitioners could not meaningfully analyze profitability and make informed decisions in a manner resembling that of a similar business.

Further, perhaps the most important indication of whether an activity is being carried on in a businesslike manner is whether the taxpayer implements methods for controlling losses, including efforts to reduce expenses and generate income. See Dodge v. Commissioner, T.C. Memo. 1998-89, 1998 WL 88175, at *5, aff'd without published opinion, 188 F.3d 507 (6th Cir. 1999). Petitioners did not change their horse-related activities in an implemented effort to reduce expenses or generate income. The alleged plan was to merge RS Noble Heir into

----

[8](...continued)
enacted with Major Sugarfixx. The plan was still to buy horses at a young age, stable them at Kiesner, and subsequently sell them at an increased value. Mr. Sapoznik testified this plan ended upon the death of Majesteit in 2015. He did not have a contract to buy another horse sired by Majesteit and had not purchased a horse before Majesteit's death in 2015.

**[\*12]** Alhambra Valley, but the death of RS Noble Heir caused this plan to become moot. There was no calculated change; petitioners simply carried on business without replacing RS Noble Heir with a subsequent stallion.

Accordingly, this factor favors respondent.

B.     Expertise of Taxpayer or His Advisers

Preparation for an activity by the extensive study of its accepted business, economic, and scientific practices, or consultation with those who are experts therein, may indicate a profit motive. Sec. 1.183-2(b)(2), Income Tax Regs.; see Engdahl v. Commissioner, 72 T.C. 659, 668 (1979).

Petitioners argue[9] that by having horses stabled at Kiesner they sought out advisers. We find this argument unavailing and agree with respondent's argument that Kiesner was not sought out to provide expertise on petitioners' horse-related activity.

Accordingly, this factor favors respondent.

C.     Taxpayer's Time and Effort Devoted to the Activity

The fact that a taxpayer devotes much of his personal time and effort to carrying on an activity may indicate an intention to derive a profit, particularly if

---

[9]All references to petitioners' arguments refer to petitioners' testimony at trial and petitioners' counsel's opening and closing arguments.

**[*13]** the activity does not have substantial personal or recreational aspects. Sec. 1.183-2(b)(3), Income Tax Regs. If, however, a taxpayer spends little time on the activity but hires a competent and qualified person to carry on the activity, a profit motive may still be indicated. Id.

While Mr. Sapoznik had retired from his previous employment, he started a similar business in the private sector. Petitioners argue that Mr. Sapoznik expended a tremendous amount of time and effort carrying on their horse-related activities. This argument is not supported by the facts. The bulk, if not all, of Mr. Sapoznik's time spent with Major Sugarfixx was personally being trained how to be a better showman and participant in shows. Further, there is no evidence, other than petitioners' testimony, to show that the hiring of Kiesner was intended to help petitioners carry on their horse-related activities for profit.[10]

Accordingly, this factor favors respondent.

D.     Expectation That Assets Used in the Activity May Appreciate

An expectation that assets used in the activity will appreciate in value and therefore may produce an overall economic profit may indicate a profit motive even if the taxpayer derives no operational profit. Sec. 1.183-2(b)(4), Income Tax

---

[10]Mr. Sapoznik testified to his belief that for RS Noble Heir to be a more valuable sire, the horse would need to gain accolades, experience, and exposure. However, nothing in the record, other than testimony, supports this belief.

**[*14]** Regs.  A profit objective, however, may be inferred from such expected appreciation of the activity's assets only where the expected appreciation exceeds the operating expenses and would be sufficient to recoup the accumulated losses of prior years.  Foster v. Commissioner, T.C. Memo. 2012-207, 2012 WL 3000350, at *7; see Golanty v. Commissioner, 72 T.C. at 427-428.

Mr. Sapoznik testified to his belief that Major Sugarfixx's value would greatly increase with a placement in the top 10 at nationals.  However, after placing in the top 10 in 2015, Major Sugarfixx was sold for $25,000, resulting in no gain on the sale.

Petitioners argue that since the sale, Major Sugarfixx has become a national champion and thus the expectation of appreciation was there.  Respondent argues there is no credible evidence in the record that the expectation of future appreciation of Major Sugarfixx even begins to approach the amounts of losses reported on petitioners' Schedules C.  The Court agrees with respondent.  Disregarding the flaws in considering appreciation under new ownership, the losses attributable to Major Sugarfixx, $156,830,[11] surpassed the highest alleged sale value, $125,000, by $31,830.

---

[11]The Court has Alhambra Valley's Schedule C information for 2013, 2014, and 2015.  In 2013, a tax year not at issue, petitioners reported a loss of $54,818.

**[\*15]** Accordingly, this factor favors respondent.

  E. <u>Taxpayer's Financial Status</u>

  A lack of substantial income from sources other than the activity may indicate that the activity is engaged in for profit. Sec. 1.183-2(b)(8), Income Tax Regs. Substantial income from sources other than the activity (particularly if losses from the activity generate substantial tax benefits) may indicate the activity is not engaged in for profit, especially if personal or recreational elements are involved. <u>Id.</u>; see <u>Golanty v. Commissioner</u>, 72 T.C. at 429.

  Petitioners argue that this may be the "single greatest factor", outside of Mr. Sapoznik's testimony, because petitioners "are not taxpayers who could just frivolously put $50,000 into a horse business because it was a hobby." This argument is contradicted by Mr. Sapoznik's testimony that in 2016 petitioners bought for $48,000 a horse which Mr. Sapoznik rides as a hobby.

  Petitioners generated a comfortable gross income for the years at issue outside of their horse-related activities.[12] The horse-related activities did not generate profit and provided no financial benefit other than the potential for generous tax savings.

---

  [12]On their 2014 and 2015 Forms 1040, U.S. Individual Income Tax Return, petitioners reported wages of $71,791 and $70,987, respectively.

**[\*16]** Accordingly, this factor favors respondent.

III.    Conclusion

The remaining factors either do not apply or do not favor petitioners' position, as petitioners:  (1) concede that the carrying on of similar or dissimilar activities does not apply in the current case; (2) did not generate any profits, or have a history of profits, during their operation of their horse-related activities; and (3) concede that there were elements of personal pleasure and enjoyment. After considering the factors listed in section 1.183-2(b), Income Tax Regs., and the facts and circumstances of this case, we conclude that petitioners did not engage in their horse-related activities with the primary purpose of realizing a profit.  Accordingly, we hold that petitioners' horse-related activities during the years at issue were not activities engaged in for profit within the meaning of section 183.

We have considered all other arguments of the parties and, to the extent not discussed above, find those arguments to be irrelevant, moot, or without merit.

To reflect the foregoing,

Decision will be entered for

respondent.